**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WAYNE JOHNSON, Individually, and as an Administrator and Heir of the Estate of Wyatt T. Johnson,

*Plaintiff*,

v.

UNITED PARCEL SERVICE, INC.,

*Defendant*.

Case No. 25-2664-AJP-RES

## MEMORANDUM AND ORDER

Plaintiff Wayne Johnson filed suit against Defendant United Parcel Service, Inc. ("UPS") asserting claims of negligence related to UPS's part in a vehicular collision that resulted in the death of Wyatt Johnson. Before the Court is Plaintiff's Motion to Strike or Alternatively Motion for Leave to File Sur-Reply (Doc. 34) and Defendant's Motion to Dismiss (Doc. 21). For the reasons stated below, the Court denies Plaintiff's Motion to Strike and denies in part and grants in part Defendant's Motion to Dismiss.

## I. Factual and Procedural Background[1]

On June 16, 2025, UPS driver Derek Taggart was attempting a left turn into a driveway on a country road in Kansas and collided with Wyatt Johnson while he was driving his motorcycle. As a result of the collision, Wyatt Johnson died.

Plaintiff alleges that Taggart admitted to being distracted by his cell phone when the collision occurred. Consequently, Plaintiff filed an Amended Complaint asserting three negligence claims against Defendant: (1) respondeat superior; (2) direct negligence in hiring, training, supervising, and retaining Taggart; and (3) negligence per se under K.S.A. 66-176 for violating laws and regulations applicable to common carriers.

Plaintiff contends that Taggart violated several laws and regulations related to distracted driving and that Defendant is directly negligent for the collision because it hired an unsafe driver, did not properly train or supervise him, and then failed to take corrective actions after the collision. Plaintiff claims Defendant's negligence in hiring, training, supervising, and retaining is a routine practice, and Defendant has willfully created unsafe environments for other people on the roads by failing to train drivers or implement safety features as cost-cutting measures. Specifically, Plaintiff points to a union contract whereby Defendant agreed not to utilize an AI camera system that detects distracted driving for disciplinary purposes. Plaintiff alleges that Defendant was aware of the dangers posed by distracted driving and knew of technology that could decrease that danger, but

[1] The facts in this section are taken from Plaintiff's Complaint unless otherwise cited.

Taggart's vehicle was not equipped with such technology. Plaintiff asserts that there was a conscious cost-cutting measure by Defendant to avoid spending money to "appropriately hire, train, and supervise drivers with appropriate hazard perception training, defensive driving training, training on eliminating distractions, and other safety countermeasures prescribed by the Department of Transportation and [Federal Motor Carrier Safety Regulations ("FMCSRs")] in order to minimize preventable collisions." (Doc. 13 at ⁋ 58). Consequently, Plaintiff demands punitive damages for Defendant's willful and wanton actions that endangered those on the road, including Wyatt Johnson. Plaintiff also asserts a negligence per se claim under K.S.A. 66-176 for several violations of FMCSRs that were adopted by Kansas.

Defendant filed a Motion to Dismiss (Doc. 21) arguing that Plaintiff's direct negligence, negligence per se, and punitive damages claims should be dismissed. In Defendant's reply to the motion, it responded to Plaintiff's arguments about the applicability of regulations under K.S.A. 66-176 for violations of the FMCSRs. Plaintiff then filed a Motion to Strike Section B of Defendant's Reply (Doc. 34) asserting that Defendant's argument was raised for the first time in a reply. In the alternative, Plaintiff moved for leave to file a surreply.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such motion, the court must determine whether a complaint contains sufficient factual allegations to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). "If the allegations in the complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] ha[s] not nudged [his] claims across the line from conceivable to plausible." *Downing v. Thompson (Downing I)*, No. 25-2225-EFM-BGS, 2025 WL 3652968, at *1 (D. Kan. Dec. 17, 2025) (internal quotes omitted) (citing *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008); *Twombly,* 550 U.S. at 570)). Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but it need not afford such a presumption to legal conclusions. *Iqbal,* 556 U.S. at 678–79. Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities. *See id.* at 678.

## III. Analysis

### A. Motion to Strike or Leave to File Surreply

The District of Kansas local rules "limit briefing on motions to the motion (with memorandum in support), a response, and a reply." *Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1142 (D. Kan. 2020) (citing D. Kan. Rule 7.1(a), (c)). "[A] motion to strike is not the proper procedure when a reply raises a new argument." *KPH Healthcare Servs. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2024 WL 5046325, at *3 (D. Kan. Dec. 9, 2024) (cleaned up) (citations omitted). Instead, the

nonmoving party should seek leave to file a surreply to respond to such arguments. *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1251 (D. Kan. 2017). Thus, Plaintiff's Motion to Strike is denied.

"When an argument is raised for the first time in reply, a district court may either grant leave to file a surreply or may disregard the newly raised materials and arguments." *C&M Res., LLC v. Extraction Oil & Gas, Inc.*, 159 F.4th 755, 762 (10th Cir. 2025) (citations omitted). "'Surreplies are typically not allowed.'" *Hampton*, 478 F. Supp. 3d at 1142 (quotation marks and citation omitted). They "are permitted only with leave of court under rare circumstances." *Id.* (quotation marks and citation omitted).

Plaintiff seeks leave to file a surreply to address Defendant's argument that violating FMCSRs cannot be the basis for a negligence per se claim. The Court, however, disagrees with Plaintiff that this argument was raised for the first time in Defendant's reply. In Plaintiff's response to Defendant's motion, Plaintiff stated that K.S.A. 66-176 encompasses violations of FMCSRs, regulations adopted by Kansas, and Kansas traffic laws. And before addressing Defendant's argument about the factual deficiencies in the negligence per se claim, Plaintiff addressed the applicability of all the regulations to the claim. (Doc. 26 at 5–7). Defendant responded to Plaintiff's arguments in its reply. The Court finds it unnecessary to grant Plaintiff another chance to argue for an interpretation of K.S.A. 66-176 that encompasses the regulations and statutes they have based their negligence per se claim upon. Thus, the motion to file surreply is also denied.

## B. Motion to Dismiss

Defendant argues that Plaintiff's direct negligence claim, negligence per se claim, and request for punitive damages should be dismissed. Each is addressed in turn.

### 1. *Plaintiff fails to state a claim for direct negligence.*

Plaintiff asserts a negligence claim against Defendant for negligently hiring, training, supervising, and retaining Taggart. Defendant first argues that Plaintiff fails to allege that Defendant knew or had reason to know Taggart was an unfit driver. This allegation, however, is not what a plaintiff is required to assert for a direct negligence claim. An employer owes a third party "the duty to exercise reasonable care under the circumstances to prevent [a third party] . . . from being harmed by its employees . . . ." *Reardon ex rel. Est. of Parsons v. King*, 310 Kan. 897, 452 P.3d 849, 857 (2019). To survive a Rule 12(b)(6) motion, "a plaintiff need only plead enough facts to plausibly state that an employer owed a duty of reasonable care, breached that duty, and caused damages." *Downing I*, 2025 WL 3652968, at *2.

Defendant next argues that Plaintiff cannot satisfy *Iqbal* and *Twombly* because the allegations are predominantly conclusory. Plaintiff asserts that Defendant's standard of care owed to third parties is set forth in the FMCSRs; therefore, Defendant's and Taggart's violations of these regulations demonstrate a breach of duty. Although the FMCSRs may be evidence of what constitutes reasonable care, Plaintiff does not allege with specificity which regulations were

violated. Instead, he simply uses the language "certain federal safety regulations" without specifying which safety regulations or what was required. (Doc. 13 at ⁋⁋ 53, 58).

Regarding actions taken by Defendant, not Taggart, Plaintiff only points to statutes requiring commercial motor vehicles to be operated in accordance with the laws of the jurisdiction. He then cites Kansas statutes incorporating FMCSRs in totality without specifying which statute is applicable to this case. Plaintiff then conclusorily alleges that Defendant failed to train Taggart on several regulations as a cost-cutting measure and that it knew that Taggart was an unfit driver when it hired him. Plaintiff, however, includes no allegations of facts that make these allegations plausible. For example, Plaintiff alleges that "UPS consciously failed to comply with certain federal safety regulations in training and supervising its drivers." (Doc. 13 at ⁋ 53). He does not provide any further factual specificity. Instead, Plaintiff only pleads facts alleging that Taggart was distracted at, or around the time of, the collision. Plaintiff does not connect the alleged distraction to Defendant's breach of a specific statute indicating the reasonable care owed. At most, Plaintiff alleges that Defendant did not install a camera system that may have detected Taggart's distraction. Plaintiff, however, has not connected this action to a duty to do so under the FMCSRs.

Furthermore, Kansas courts only hold individuals responsible for the probable consequences arising from their negligence. *Burnette v. Eubanks*, 308 Kan. 838, 425 P.3d 343, 348 (2018). There is no allegation of a causal link between

Defendant's actions and the injuries sustained by Johnson. Simply stating, "As a result of UPS's negligence . . . Wyatt T. Johnson, deceased, sustained personal injuries and suffered conscious pain and suffering and ultimately a wrongful death" is a legal conclusion of causation; it is not a sufficient allegation of proximate or actual causation. (Doc. 13 at ⁋ 59). Thus, even if Plaintiff adequately alleged Defendant's breach of a duty, Plaintiff fails to adequately allege causation.

In sum, Plaintiff fails to adequately allege facts to reasonably infer that Defendant breached a duty or that there is a causal link between a breach of such duty and the collision. Thus, the Court dismisses Plaintiff's claim of direct negligence.

2. *Plaintiff fails to adequately allege a negligence per se claim under K.S.A. 66-176.*

Plaintiff alleges a negligence per se claim under K.S.A. 66-176 against Defendant for violating the FMCSRs, the Kansas statutes adopting the FMCSRs, and Kansas traffic laws. Specifically, he alleges that Defendant violated the following regulations: 49 C.F.R. §§ 390.3(e)(1)–(2), 392.80, 392.82, 392.3, 395.3; K.A.R. §§ 82-4-3a, 3f, 3h; K.S.A. 66-1,129; K.S.A. 8-1527; and K.S.A. 8-15,111, all of which common carriers are required to follow. Plaintiff claims that each violation harmed him within the meaning of K.S.A. 66-176. Defendant contends that the negligence per se claim should be dismissed because Plaintiff does not allege violations of Chapter 66, and Plaintiff fails to plead sufficient facts or causation.

In Kansas, a negligence per se claim requires "'(1) violation of a statute, ordinance, or regulation, and (2) the violation must be the cause of the damages

resulting therefrom.'" *Pullen v. West*, 278 Kan. 183, 92 P.3d 584, 593 (2004) (quoting *Cullip v. Domann*, 266 Kan. 550, 972 P.2d 776, 779 (1999)). Furthermore, "Kansas law limits negligence per se to violations of a statute for which the legislature intended to create a private cause of action." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1280 (10th Cir. 2021). Kansas law uses a "two-part test in determining whether a private right of action is created." *Pullen*, 92 P.3d at 594. "First, the party must show that the statute was designed to protect a specific group of people rather than to protect the general public." *Id.* "Second, the court must review legislative history in order to determine whether a private right of action was intended." *Id.*

Under K.S.A. 66-176:

> Any public utility or common carrier which violates any of the provisions of law for the regulation of public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, the actual damages sustained by the party aggrieved, together with the costs of suit and reasonable attorney fees, to be fixed by the court.

Kansas courts have interpreted K.S.A. 66-176 as creating an individual right of action against the common carrier when any person or corporation is injured as a direct result of a common carrier's violation of provisions of law regulating common carriers. *Jahnke v. Blue Cross & Blue Shield of Kan., Inc.*, 51 Kan. App. 2d 678, 353 P.3d 455, 464 (2015) (citing *Dietz v. Atchison, Topeka and Santa Fe R.R. Co.*, 16 Kan. App. 2d 342, 823 P.2d 810, 815 (1991)).

The Court notes that although he has set forth the negligence per se standard, Plaintiff's K.S.A. 66-176 claim is more akin to a statutory claim. In *Dietz*, the defendants used the decedent's violation of a Kansas regulation requiring

compliance with a FMCSR, i.e., K.A.R. § 82-4-3, as a defense to a wrongful death action. 823 P.2d at 813. The court held that the violative conduct was negligence per se and looked to K.S.A. 66-176 when determining whether the legislature intended to create a private cause of action. *Id.* at 814–15. Because the court found that there was a private cause of action, it held that the decedent's negligence could be used as a defense. *Id.* at 815. Here, in contrast, Plaintiff asserts a violation of K.S.A. 66-176 as its negligence per se claim. The alleged violations of FMCSRs and Kansas laws are brought under K.S.A. 66-176 and not as separate negligence per se claims. Therefore, the Court views Plaintiff's claim as a statutory claim under K.S.A. 66-176, which contains a private cause of action, rather than a true negligence per se claim, and analyzes whether the asserted laws and regulations can be brought under K.S.A. 66-176. *See Dawdy v. Borderlands Inc.*, No. 6:24-cv-01195-HLT, 2026 WL 1905723, at *4, n. 4 (D. Kan. July 2, 2026) (finding the plaintiff's negligence per se claim to be a statutory claim under K.S.A. 66-176 and explaining Kansas' confusing negligence per se terminology).

The parties dispute what "provisions of law for the regulation of . . . common carriers" are encompassed by K.S.A. 66-176. Plaintiff argues for a broad interpretation that encompasses all laws applicable to common carriers. Defendant argues for a narrower interpretation that limits recovery to violations of Chapter 66. Under this interpretation, Defendant contends that Plaintiff cannot recover for violations of the FMCSRs, the Kansas statutes adopting the FMCSRs, or Kansas traffic laws. The Court will address each in turn.

a. FMSCRs

In *Downing I*, the District of Kansas recently considered the interpretation of K.S.A. 66-176 with regard to a negligence per se claim and whether violations of FMCSRs and Kansas traffic laws could be brought under K.S.A. 66-176. 2025 WL 3652968, at *3; *see also Downing v. Thompson (Downing II)*, No. 25-2225-EFM-BGS, 2026 WL 632278, *2–5 (D. Kan. Mar. 6, 2026). The Court noted that there is clear precedent that FMCSRs cannot be the basis for a negligence per se claim because "a plaintiff may not bring a private cause of action premised on a violation of FMCSRs." *Downing I*, 2025 WL 3652968, at *2 (collecting cases); *see also Leon v. Fed Ex Ground Package Sys., Inc.*, No. CIV 13-1005 JB/SCY, 2016 WL 836980, at *11–12 (D.N.M. Feb. 16, 2016) (stating that "there is no federal private right of action allowing personal injury or wrongful death plaintiffs to hold defendants liable for violations of the FMCSR") (collecting cases). Thus, to the extent Plaintiff's K.S.A. 66-176 claim is premised solely on a violation of the FMCSRs, it is not allowed. Thus, Plaintiff cannot bring a claim pursuant to K.S.A. 66-176 for alleged violations of 49 C.F.R. §§ 390.3(e)(1)–(2), 392.80, 392.82, 392.3, 395.3.

b. Kansas regulations adopting the FMCSRs

In *Downing II*, the District of Kansas also found that Kansas Administrative Regulations ("K.A.R.s") that simply incorporate FMCSRs *by reference*, but do not require compliance with the FMCSRs, do not fall under K.S.A. 66-176. 2026 WL 6322787, at *3.

In this case, Plaintiff alleges violations of K.A.R. 82-4-3f, K.A.R. 82-4-3h, and K.A.R. 82-4-3a as part of his K.S.A. 66-176 claim. The Court must therefore determine whether these administrative regulations require compliance of the FMCSRs or simply reference them. Furthermore, general provisions and undefined violations are not sufficient. *See Dawdy*, 2026 WL 1905723, at *5.

K.A.R. § 82-4-3f adopted by reference "49 C.F.R. Part 390." However, 49 C.F.R. § 390.3 was suspended that same date. Thus, K.A.R. 82-4-3f did not adopt 49 C.F.R. § 390.3(e)(1)–(2). Accordingly, Plaintiff cannot rely on this regulation as the basis for his K.S.A. 66-176 claim.[2]

K.A.R. § 82-4-3a adopted 49 C.F.R. Part 395 by reference. 49 C.F.R. § 395.3 limits the maximum driving time for property-carrying vehicles. Similarly, K.A.R. § 82-4-3h adopted 49 C.F.R. Part 392 by reference. 49 C.F.R. § 392.80 prohibits motor carriers from allowing or requiring their drivers to engage in texting while driving, and 49 C.F.R. § 392.82 prohibits a motor carrier from allowing or requiring its drivers to use a hand-held mobile telephone while driving a commercial motor vehicle. These three specific provisions, made for regulating common carriers, and adopted by Kansas do not contain additional language necessitating compliance as *Downing II* requires.

Nevertheless, regardless of the applicability of these regulations to K.S.A. 66-176, Plaintiff fails to allege any facts indicating Defendant violated the regulations.

---

[2] As noted above, the FMCSR, *i.e.*, 49 C.F.R. § 390.3(e)(1)–(2), also cannot be an independent basis for a negligence per se claim under K.S.A. 66-176.

Plaintiff does not plead any facts as to the hours that Taggart had been driving, and by Plaintiff's own admission there have been no allegations of fatigue.[3] There are also no allegations that Taggert was texting, let alone that Defendant allowed or required such activity. Construing the facts generously, Plaintiff alleges that Taggart was using a cellphone which would be violative of 49 C.F.R. § 392.82. This claim, however, is against Taggart's employer, not Taggart, so there must be an allegation that Defendant allowed or required Taggart to use a hand-held cellphone. This allegation is not present. Of the three administrative regulations that are encompassed by the language of K.S.A. 66-176, Plaintiff fails to plead sufficient facts to plausibly allege that Defendant violated said laws. In sum, Plaintiff fails to state a claim under K.S.A. 66-176 for alleged violations of K.A.R. §§ 82-4-3a, 3f, 3h.

c. Kansas traffic laws (not adopted by the KCC)

Furthermore, Kansas traffic laws not formally adopted by the KCC do not fall under K.S.A. 66-176.[4] *Downing II*, 2026 WL 632278, at *4–5. The plain language of K.S.A. 66-176 imposes liability for violations of the provisions of law *for* the regulation of common carriers, but it does not extend to a motor carrier's violation of general traffic laws made to regulate everyone on the road. *Dawdy*, 2026 WL 1905723, at *4–5 (analyzing the plain text of K.S.A. 66-176 and holding that Kansas

---

[3] Plaintiff acknowledges that they have failed to plead a sufficient basis for 49 C.F.R. § 392.3 (a regulation concerning fatigued drivers). (Doc. 26 at 5).

[4] There is no caselaw from Kansas directly addressing whether a Kansas traffic law can be the basis for a K.S.A. 66-176 claim. The closest case, however, *Western Kansas Express, Inc. v. Dugan Truck Line, Inc.*, supports excluding Kansas traffic law violations from K.S.A. 66-176 claims as the Kansas Court of Appeals only cited statutes within Chapter 66 when evaluating a K.S.A. 66-176 claim and stated that "statutory provisions regulating public motor carriers are found at K.S.A. 66-1,108 et seq., in some 38 separate provisions." 11 Kan. App. 2d 336, 720 P.2d 1132, 1141 (1986).

traffic laws are not encompassed by the statute because the ordinary meaning of "for" indicates purpose and requires the violated law to be one that "exists for the purpose of regulating common carriers"); *see also Downing II*, 2026 WL 632278, at *4 (stating that "[t]o read K.S.A. 66-176 as including traffic statutes not otherwise attributable to Chapter 66 impermissibly stretches the statute beyond its plain language"). Because general traffic laws are not encompassed, Plaintiff cannot bring a claim under K.S.A. 66-176 for violations of K.S.A. 8-1527 and 8-15,111.

Finally, Plaintiff also asserts a violation of K.S.A. 66-1,129 as part of his negligence per se claim under K.S.A. 66-176. K.S.A. 66-1,129(a) reads:

> The commission shall adopt rules and regulations necessary to carry out the provisions of this act. No public motor carrier of property . . . shall operate or allow the operation of any motor vehicle on any public highway in this state except within the provisions of the rules and regulations adopted by the commission . . . .

This statute is an enabling statute and not a substantive statute. Therefore, even if Plaintiff had alleged facts indicating Defendant violated this provision, which they do not, a claim could not be brought under K.S.A. 66-176. *See Dawdy*, 2026 WL 1905723, at *5 (holding that K.S.A. 66-1,129 is an enabling statute and cannot be the basis for a K.S.A. 66-176 claim).

Thus, Count III is dismissed entirely.

*3. Plaintiff adequately alleges facts to support punitive damages.*

Plaintiff's Amended Complaint seeks to recover punitive damages for Defendant's willful and wanton actions. Defendant argues that there is insufficient evidence to award these damages because the conduct here is not extreme enough to warrant punitive damages and that Plaintiff only alleges that Defendant knew of

the general dangers of distracted driving, but not that Taggart was prone to distracted driving. Defendant, however, does not direct the Court to caselaw supporting these points. Indeed, Defendant cites caselaw that does not stand for the proposition for which it states. As the Court will not make the movant's argument for it, Defendant's request to dismiss Plaintiff's claim for punitive damages is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**. Counts II and III are dismissed. Defendant's Motion to Dismiss the claim for punitive damages is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 34) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 9th day of November, 2026.

ANTHONY J. POWELL
UNITED STATES DISTRICT JUDGE